UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BOUNTHAI KHAM,

                            Plaintiff,                        18-CV-790Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

---

## **DECISION AND ORDER**

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #16.

## **BACKGROUND**

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on July 8, 2014, alleging disability beginning December 4, 2013, at the age of 51, due to depression, memory loss, stress, anxiety, a seizure disorder, headaches, back and knee pain, and arthropathy. Dkt. #7, pp.192 & 219-220.

On July 11, 2017, plaintiff appeared with counsel and testified through an interpreter, along with an impartial vocational expert ("VE"), Jay Steinbrenner, at an

administrative hearing before Administrative Law Judge ("ALJ"), Maria Herrero-Jaarama. Dkt. #7, pp.34-78. Plaintiff testified that he lived with his girlfriend in the lower level of a house. Dkt. #7, p.43. He has a seventh grade education and can understand some English, but cannot read or write. Dkt. #7, p.44. His doctor told him that he cannot work because of his seizures, which begin with dizziness, followed by blurry vision and loss of consciousness. Dkt. #7, p.46. He testified that the medication prescribed to prevent his seizures leaves him tired. Dkt. #7, p.46. His most recent seizure was three weeks ago. Dkt. #7, p.47. He also suffers headaches every two or three days which he described as a heaviness and beeping inside his head which persist an hour after he takes his medication. Dkt. #7, p.48. He described his back pain as constant and severe, a 9/10 on the pain scale. Dkt. #7, p.51. He testified that his back pain worsens if he sits or walks too long. Dkt. 37, p.51. Muscle relaxants help reduce the pain to a 6 or 7. Dkt. #7, p.52. He can sit for approximately 5-10 minutes before he needs to get up and move around. Dkt. #7, p.59. He testified that he can walk the length of two or three houses before he needs to rest. Dkt. #7, p.59. He cannot lift more than two bottles of water at a time. Dkt. #7, p.60. Plaintiff is seeing a counselor and psychiatrist for his depression and testified that the medication made him feel better. Dkt. #7, p.55. He does not have any difficulty interacting with people, including supervisors or co-workers. Dkt. #7, p.57. He has trouble concentrating and remembering things. Dkt. #7, p.61. He is capable of grocery shopping, cooking, washing dishes and cleaning, but his girlfriend helps him and does most of the laundry, vacuuming and cleaning. Dkt. #7, pp.58 & 62. He socializes with friends every two or three weeks. Dkt. #7, p.59.

The VE was asked to assume an individual with the residual functional capacity ("RFC"), to perform light work[1] with the following limitations: occasional pushing and pulling; occasional climbing of ramps and stairs; occasional balancing on level surfaces; occasional stooping, kneeling and crouching, but never crawling; no exposure to unprotected heights and moving machinery or mechanical parts; no working with bright or flickering lights; no driving motor vehicles or other machinery; off-task 5% of the day in addition to regularly scheduled breaks; limited ability to speak and understand English; able to understand, carry out and remember simple, routine and repetitive tasks; able to work in a low-stress environment with no supervisory responsibilities, no work at production-rate pace and no fast moving assembly line type work; no independent decision making required except with respect to simple, routine, repetitive decisions with few, if any, workplace changes in work routines, processes or settings; work that would not require a high level of attention to detail; can be around co-workers throughout the day, but cannot perform tandem job tasks requiring cooperation with co-workers; can perform work that involves frequent contact and interaction with supervisors and occasional contact and interaction with co-workers and the public. Dkt. #7, pp.70-72. The VE testified that such an individual could perform plaintiff's past work as a hand packer or housekeeper and could also work as an

---

[1] Light work involves lifting no more than 20 pounds at a time and occasionally lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

injecting molder machine tender or packaging machine operator tender. Dkt. #7, p.73. The VE testified that the injection molder machine tender position would permit plaintiff to sit and stand at will. Dkt #7, p.76.

The ALJ rendered a decision that plaintiff was not disabled on August 17, 2017. Dkt. #7, pp.12-28. The Appeals Council denied review on May 21, 2018. Dkt. #7, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 19, 2018. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 4, 2013; (2) plaintiff's headaches/migraines; seizure disorder; major depressive disorder; and arthropathy with

lumbar impairment constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the residual functional capacity to perform light work with the following limitations: occasional push and pull, climbing of ramps and stairs, balancing on level surfaces, stooping, kneeling and crouching; no bright or flickering lights, crawling or exposure to unprotected heights, moving machinery or moving mechanical parts, driving motor vehicles or other machinery; limited ability to speak and understand English; limited to simple, routine and repetitive tasks in a low stress environment which would not require a high level of attention to detail and would permit him to be off-task 5% of the work day in addition to regularly scheduled breaks and limit him to frequent contact and interaction with supervisors and occasional contact and interaction with co-worker and the public; and (5) plaintiff was capable of performing his past work as a hand packer and cleaner, which, as performed by plaintiff, were unskilled jobs requiring no more than light exertion, and could also work as an injection molder and packaging machine operator, each of which were unskilled jobs requiring light exertion. Dkt. #7, pp. 17-28.

      Plaintiff argues that there are no medical source or consulting examiner opinions to support the ALJ's RFC and that the ALJ is not permitted to interpret plaintiff's complex medical findings to determine plaintiff's RFC. Dkt. #11-1, pp.19-23. Plaintiff argues that the ALJ failed to meet his obligation to develop the record and obtain physical and psychiatric functional assessments. Dkt. #11-1, pp.24-29.

The Commissioner responds that the ALJ properly assessed the objective medical findings to determine plaintiff's RFC. Dkt. #14-1, pp13-15. The Commissioner further responds that no further development of the record was required because the evidence before the ALJ was sufficient to determine plaintiff's RFC. Dkt. #14-1, pp.15-17.

In light of the essentially non-adversarial nature of a social security proceeding, it is well accepted that an ALJ has an affirmative duty to develop the administrative record. *See, e.g., Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). Due to the difficulty in determining whether individuals suffering from mental illness will be able to adapt to the demands or stress of the workplace, the duty to develop the record is particularly important where mental illness is present. *Marcano v. Berryhill*, 17 Civ. 4442, 2018 WL 5619749, at * 11 (S.D.N.Y. July 13, 2018). This duty exists even when the claimant is represented by counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). However, the ALJ is required to seek out additional evidence only where there are obvious gaps in the record. *Eusepi v. Colvin,* 595 Fed. App'x 7, 9 (2d Cir. 2014). The ALJ is not obligated to seek additional medical records where the record evidence is sufficient for the ALJ to make a disability determination. *Johnson v. Comm'r of Soc. Sec.,* 16-CV-831, 2018 WL 1428251, at *5 (W.D.N.Y. March 22, 2018).

SSA regulations in effect when plaintiff filed his claim provide that the agency "will request a medical source statement," although the lack of a medical source statement does not, by itself, necessarily render the record incomplete. *Pellam v.*

*Astrue*, 508 Fed. App'x 87, 90 n.2 (2d Cir. 2013), *citing* 20 C.F.R. § 404.1513(b)(6). In *Tankisi v. Commissioner of Social Security*, for example, the Court of Appeals declined to remand where an ALJ failed to request medical source opinions, but the extensive medical record contained an assessment of plaintiff's limitations by the treating physician. 521 Fed. App'x 29, 34 (2d Cir. 2013). In *Pellam*, the Court of Appeals determined that the ALJ was not required to obtain a medical source statement from one of plaintiff's treating physicians because the ALJ's assessment of plaintiff's RFC was largely supported by a consultative examiner's report. 508 Fed. App'x at 90. Thus, an RFC finding without treating source opinion evidence will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source. *Smith v.Comm'r of Soc. Sec.*, 337 F. Supp.3d 216, 225 (W.D.N.Y. 2018). "Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's physical limitations, the ALJ may not rely on the record in determining the plaintiff's RFC." *Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp.3d 122, 128 (W.D.N.Y. 2018). This is because an ALJ is not a medical professional, and is not qualified to assess a plaintiff's RFC on the basis of bare medical findings. *Williams v. Comm'r of Soc. Sec.*, 366 F. Supp.3d 411, 416 (W.D.N.Y. 2019). Thus, district courts have permitted an ALJ to use common sense judgment about functional capacity without a physician's assessment only when the medical evidence reveals minor physical impairments. *Id.* at 417-418. Where the ALJ identifies severe impairments for which plaintiff received significant treatment, a medical opinion addressing plaintiff's functional limitations is required. *Id.* at 418.

In the instant case, although the ALJ determined that plaintiff suffered from multiple severe conditions, there is no medical source statement from a treating physician or consultative examiner opining as to the effect of such conditions upon plaintiff's capacity to perform work activity on a sustained basis and plaintiff's medical records do not provide such an assessment. As a result, the ALJ's determination of plaintiff's RFC is not supported by substantial evidence. *See Williams,* 366 F. Supp.3d at 416-418 .

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #11), is granted in so far as plaintiff seeks remand and the Commissioner's motion for judgment on the pleadings (Dkt. #14), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** Buffalo, New York
February 27, 2020

  *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**